In re Carnell TURNER, Petitioner.

No. 00–2660.

United States Court of Appeals,
Third Circuit.

Argued July 16, 2001.

Filed Sept. 21, 2001.

Peter Goldberger [ARGUED], Law Office of Peter Goldberger, Ardmore, PA, Counsel for Petitioner.

Robert A. Zauzmer [ARGUED], Office of the U.S. Attorney, Philadelphia, PA, Counsel for Respondent.

Before MANSMANN,* SCIRICA and RENDELL, Circuit Judges.

* Via video conference.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Carnell Turner seeks our permission to file a second habeas corpus application in the Eastern District of Pennsylvania in an attempt to vacate his 1996 sentence for crack cocaine distribution and conspiracy to distribute crack cocaine. Turner's proposed habeas corpus application invokes the new rule of constitutional law announced by the Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The legal issue presented by this case is whether the new rule found in *Apprendi* has been "made retroactive to cases on collateral review by the Supreme Court," such that Turner may file a second habeas corpus application in the District Court. Following the Supreme Court's recent pronouncements in *Tyler v. Cain,* —— U.S. ——, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), we hold that *Apprendi* has not been "made retroactive to cases on collateral review by the Supreme Court," and accordingly will deny Turner permission to file a second application.

### I.

▇ According to the Antiterrorism and Effective Death Penalty Act of 1996, a second or successive habeas corpus application filed by a federal prisoner like Turner:

> [M]ust be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> . . . . .
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 ¶ 8. Section 2244 certification to which this provision refers is described in § 2244(b)(3), which sets forth the procedures and standards for applications in the court of appeals. Under these standards, Turner must make "a prima facie showing that the application satisfies the requirements" of subsection § 2244. *Id.* § 2244(b)(3)(C). Therefore, reading § 2255 in conjunction with § 2244, Turner must make a "prima facie showing" that his habeas corpus application contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," in order for us to grant him permission to file his application in the district court. *See generally Reyes–Requena v. United States,* 243 F.3d 893, 897–99 (5th Cir.2001) (discussing the interplay between § 2255 and § 2244).

### II.

▇ Turner's application contains an *Apprendi* claim. In *Apprendi,* the Supreme Court held, for the first time, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. For purposes of this opinion, we need not address the intricacies of *Apprendi,* but suffice it to say that the case has generated quite a stir in the legal community, and has important implications for the conduct of criminal trials and sentencing. *See, e.g., id.* at 524, 120 S.Ct. 2348 (O'Connor, J., dissenting) (stating that *Apprendi* "will surely be remembered as a watershed change in constitutional law"); *United States v. Mack,* 229 F.3d 226, 236 (3d Cir.2000) (Becker, C.J., concurring) (noting that *Apprendi*'s implications have generated "enormous controversy," and that *Apprendi* claims may "reach tidal proportions"). It is not surprising, then, that the parties agree that *Apprendi* establishes "a

new rule of constitutional law." They also agree that this new rule was "previously unavailable" to Turner, because it was announced more than a year after his first § 2255 motion was decided.[1]

Therefore, the only issue we need decide is whether Turner can make a prima facie showing that *Apprendi* has been "made retroactive to cases on collateral review by the Supreme Court."[2] Fortuitously, the Supreme Court's recent decision in *Tyler* greatly simplifies this inquiry, and dictates our response. In *Tyler*, which overruled our earlier decision in *West v. Vaughn*, 204 F.3d 53 (3d Cir.2000), the Court explained that a new rule is not "made retroactive to cases on collateral review" unless the Court itself holds it to be retroactive. *Tyler*, 121 S.Ct. at 2482. As the Court explained:

> The Supreme Court does not "make" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.
> *Id.*

The government correctly points out that no Supreme Court case specifically holds that *Apprendi* is retroactive on collateral review, because the Court has yet to consider that precise question. The government concludes that under *Tyler*, this alone means that we must dismiss Turner's petition, because only the Supreme Court itself can "make" a case retroactive on collateral review.

The government's interpretation of *Tyler*, however, is overly simplistic.[3] Justice O'Connor, who supplied the crucial fifth vote for the majority, wrote a concurring opinion, and her reasoning adds to our understanding of the impact of *Tyler*. She explains that it is possible for the Court to "make" a case retroactive on collateral review without explicitly so stating, as long as the Court's holdings "logically permit no other conclusion than that the rule is retroactive." *Id.* at 2486 (O'Connor, J., concurring). In other words, contrary to

---

**1.** At the time of his first § 2255 filing, *Apprendi*'s "new rule" was also "previously unavailable" to Turner in the sense that the *Apprendi* argument that he now advances in his second application was foreclosed by a large body of settled precedent. In other words, whenever a Supreme Court decision, like *Apprendi*, "marks a 'clear break with the past,' " that rule " 'will almost certainly have been' previously unavailable in the requisite sense." *Tillman v. Cook*, 215 F.3d 1116, 1122 (10th Cir.2000) (quoting *Reed v. Ross*, 468 U.S. 1, 17, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)).

**2.** The government also maintains that in order for us to grant Turner's motion, he must make a "prima facie" showing that he has a meritorious *Apprendi* claim in the first place. Turner disputes this requirement, arguing that we need not, and should not, engage the merits of his claim at this point, but leave that task for the District Court. Although the government fails to identify any specific language in the statute that would support its interpretation, this interpretation apparently enjoys some support in the courts of appeals. *E.g., Reyes–Requena v. United States*, 243 F.3d 893, 899 (5th Cir.2001) (stating that a prima facie showing means "a sufficient showing of possible merit to warrant a fuller exploration by the district court") (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir.1997)). We need not rule on this issue, however, because even if we assume that Turner need not make a prima facie showing of a meritorious *Apprendi* claim at this stage, he still must make a prima facie showing that *Apprendi* has been "made retroactive to cases on collateral review by the Supreme Court," a requirement that he cannot satisfy. *Infra* pp. 230–31.

**3.** Nevertheless, this interpretation of *Tyler* has apparently prevailed in at least one of our sister circuit courts of appeals. *E.g., Browning v. United States*, 241 F.3d 1262, 1266 (10th Cir.2001).

the government's position, just because the Court has never specifically considered the retroactivity of *Apprendi* does not foreclose the possibility that the Court has "made" *Apprendi* retroactive on collateral review.

For example, Justice O'Connor explained that:

[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have "made" the given rule retroactive to cases on collateral review.

*Id.* at 2485–86. But Justice O'Connor qualified this approach by explaining that:

The relationship between the conclusion that a new rule is retroactive and the holdings that "ma[k]e" this rule retroactive, however, must be strictly logical— *i.e.*, the holdings must *dictate* the conclusion and not merely provide principles from which one may conclude that the rule applies retroactively.

*Id.* at 2486 (emphasis in original). In sum, under *Tyler*, it is not enough that the new rule in *Apprendi* is *arguably* retroactive; rather, we will grant Turner permission to file a second habeas corpus application in the district court only if Supreme Court holdings *dictate* the conclusion that the new rule in *Apprendi* has been made retroactive to cases on collateral review.

Turner advances two principal arguments in support of the idea that the Court's holdings "dictate" that *Apprendi* applies retroactively on collateral review. First, he argues that the "new rule" announced by *Apprendi* is a substantive rule (as opposed to a procedural one) and that substantive rules automatically enjoy retroactive effect on collateral review. And second, he argues that *Apprendi* is an extension of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which the Supreme Court has held fully retroactive, and therefore by logical necessity, *Apprendi* must be retroactive on collateral review as well. Neither of these arguments, however, persuades us that the Supreme Court has "made" *Apprendi* retroactive to cases on collateral review, in the sense that *Tyler* requires.

We agree with Turner that when analyzing a "new rule," the first question to ask is whether the rule is substantive or procedural in nature, because "the Supreme Court has created separate retroactivity standards for new rules of criminal procedure and new decisions of substantive criminal law." *United States v. Woods,* 986 F.2d 669, 676 (3d Cir.1993). Under the substantive retroactivity standard, the appropriate inquiry is whether the claimed legal error was a " 'fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it presents exceptional circumstances where the need for the remedy afforded' by collateral relief is apparent." *Id.* (quoting *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). In contrast, new rules of criminal procedure are given retroactive effect on collateral review only if they can satisfy one of two narrow exceptions described in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). First, "a court should apply a new criminal procedural rule retroactively if 'it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Woods,* 986 F.2d at 677 (quoting *Teague,* 489 U.S. at 306, 109 S.Ct. 1060). And second, "under *Teague* a court should apply a new procedural rule retroactively if 'it requires the observance of those proce-

dures that ... are implicit in the concept of 6 ordered liberty.'" *Id.* (quoting *Teague,* 489 U.S. at 306, 109 S.Ct. 1060). As is apparent from the above discussion, Turner is incorrect to assert that new substantive rules automatically receive retroactive effect on collateral review. Rather, such rules must meet the standard that we described in *Woods.*

More importantly, the Supreme Court's holdings certainly do not "dictate" that the new rule in *Apprendi* is substantive—rather than procedural—in nature. Turner characterizes the new rule in *Apprendi* as a substantive rule of constitutional law because it forces the government to treat certain facts as the equivalent of substantive offense elements (and thus submit them to a jury and prove them beyond a reasonable doubt), which otherwise would be mere sentencing factors determined by a judge. On the other hand, the government characterizes the new rule as purely procedural in nature, because the rule imposes certain procedural requirements (namely, submission to a jury and proof beyond a reasonable doubt) for the establishment of certain facts.

Significantly, the government's interpretation enjoys the support of the vast majority of courts to consider the issue. *E.g., United States v. Hernandez,* 137 F.Supp.2d 919, 929 (N.D.Ohio 2001) (noting that "most courts that have addressed the retroactivity of *Apprendi* have [assumed] ... without discussion that the decision announced a constitutional rule of criminal procedure"); *Levan v. United States,* 128 F.Supp.2d 270, 276 (E.D.Pa. 2001) (stating that "*Apprendi* constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial"); *Ware v. United States,* 124 F.Supp.2d 590, 595 (M.D.Tenn. 2000) (same). *But see Darity v. United States,* 124 F.Supp.2d 355, 361 (W.D.N.C. 2000) (characterizing *Apprendi* as a "substantive change in the law"), overruled by *United States v. Sanders,* 247 F.3d 139, 146–151 (4th Cir.2001). For the purposes of our analysis, however, we need not choose between these competing interpretations of *Apprendi.* It is enough for us to note that the new rule in *Apprendi* is merely *arguably* substantive—certainly, no Supreme Court holdings "dictate" that *Apprendi* establishes a substantive rule of law—and therefore, in light of the strict *Tyler* standard, Turner's argument must fail.

Turner's second argument is similarly flawed. According to *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), a defendant cannot be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. 1068. Turner points out that the Court has subsequently held both *Winship* and certain extensions of *Winship* to be fully retroactive. *E.g., Hankerson v. North Carolina,* 432 U.S. 233, 242–44, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Ivan V. v. City of New York,* 407 U.S. 203, 204–05, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972). Turner describes the new rule in *Apprendi* as simply an extension and application of the basic *Winship* rule, and therefore concludes that *Apprendi,* like *Winship,* must be applied retroactively on collateral review.

Even if we assume that Turner is correct to describe the new rule in *Apprendi* as simply a new extension and application of *Winship,* this does not mean that Supreme Court holdings "dictate" that *Apprendi* be applied retroactively to cases on collateral review. Instead, Turner finds himself in essentially the same position as the petitioner in *Tyler,* who argued that the rule contained in *Cage v. Louisiana,*

498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), had been "made retroactive to cases on collateral review by the Supreme Court." *Tyler*, 121 S.Ct. at 2483–85. In *Cage*, the Court described the issue before it as "whether the reasonable-doubt instruction in this case complied with *Winship*," and ultimately concluded that "the instruction at issue was contrary to the 'beyond a reasonable doubt' requirement articulated in *Winship*." *Cage*, 498 U.S. at 40–41, 111 S.Ct. 328. In other words, *Cage* was a straightforward extension and application of *Winship*—just as Turner characterizes *Apprendi*—and yet the *Tyler* Court rejected the petitioner's argument, observing that "[t]he most he can claim is that ... this Court *should* make *Cage* retroactive to cases on collateral review. What is clear, however, is that we have not 'made' *Cage* retroactive to cases on collateral review." *Tyler*, 121 S.Ct. at 2484 (emphasis in original). Similarly, the most that Turner can claim is that the Supreme Court *should* make *Apprendi* retroactive to cases on collateral review, and not that existing Supreme Court holdings dictate that result. Accordingly, Turner cannot satisfy the *Tyler* standard.[4]

In sum, we will deny Turner's request for leave to file a second habeas corpus application in the district court because he cannot make a "prima facie showing" that his habeas corpus application contains "a new rule of constitutional law, made retro-

active to cases on collateral review by the Supreme Court, that was previously unavailable." We note, however, that our decision does not address the underlying merits of Turner's *Apprendi* claim. Accordingly, we will deny Turner's motion without prejudice in the event that the Supreme Court subsequently makes *Apprendi* retroactive to cases on collateral review. *E.g., Browning v. United States*, 241 F.3d 1262, 1267 (10th Cir.2001).

In accordance with the foregoing, Carnell Turner's motion for leave to file a second habeas corpus application in the district court will be DENIED without prejudice.

---

4. Turner also makes an alternative attempt to satisfy *Tyler* by arguing that the new rule in *Apprendi* meets the standards for retroactivity of new procedural rules articulated in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Turner concedes that *Apprendi* does not satisfy the first *Teague* exception, but suggests that it meets the second *Teague* exception as a new procedural rule that is "implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. However, Turner does not press this point, most likely because any attempt to fit *Apprendi* within the *Teague* framework would

flatly contradict his argument that *Apprendi* announces a new rule of substantive law, and is therefore outside the ambit of *Teague* altogether. Moreover, even if we assume that the new rule in *Apprendi* falls within the *Teague* framework, the most we can say is that *Apprendi* arguably satisfies *Teague's* second exception—not that Supreme Court holdings "dictate" that result—as evidenced by the disagreement on this issue in the federal courts. *E.g., United States v. Pinkston*, 153 F.Supp.2d 557, 560 (M.D.Pa.2001) (collecting cases). Thus, *Teague* cannot assist Turner in meeting his burden under *Tyler*.