

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2005

# In Re: Olopade

Precedential or Non-Precedential: Precedential

Docket No. 05-1617

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Olopade " (2005). *2005 Decisions.* Paper 1283.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1617

———


IN RE: ANTHONY BOLA OLOPADE,
<u>Petitioner</u>


———

On Request for Permission to File
a Second or Successive Habeas Corpus Petition
Pursuant to 28 U.S.C. § 2244(b)

———


Submitted on Motion Under Third Circuit LAR 34.1(a)
March 10, 2005

Before:  SLOVITER, NYGAARD, and FUENTES, <u>Circuit</u>
<u>Judges</u>

(Filed April 11, 2005)

———


Anthony Bola Olopade # 03406-070
Elkton FCI
P.O. Box 10
Lisbon, Ohio 44432

    Petitioner Pro Se

Christopher J. Christie
        United States Attorney
George S. Leone
        Chief, Appeals Division
United States Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07102-2535

        Attorneys for Respondent


OPINION OF THE COURT


SLOVITER, Circuit Judge.

Anthony Olopade has filed an application in this court pursuant to 28 U.S.C. § 2244 seeking permission to file a second or successive motion under 28 U.S.C. § 2255 to vacate his sentence. In ruling on that application, we must decide whether the United States Supreme Court's recent decision in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), applies to persons seeking permission to file second or successive § 2255 motions. In keeping with the holdings of all the other courts that have addressed related issues,[1] we hold that Booker cannot be

---

[1] See, e.g., Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (per curiam) ("[W]e conclude that Booker . . . falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review."); Bey v. United States, 399 F.3d 1266, 1269 (10th Cir. 2005) ("Booker may not be applied retroactively to second or successive habeas petitions."); Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005) ("[W]e conclude that Booker's rule does not apply retroactively in collateral proceedings . . . ."); Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) (per curiam) ("[N]either Booker nor Blakely [v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004),] apply retroactively to Green's collateral challenge."); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)

2

relied on for that purpose.

## I.

In 1998, a jury convicted Anthony Olopade in the United States District Court for the District of New Jersey of conspiracy to import heroin. The District Court thereafter imposed a sentence of 240 months imprisonment. On direct appeal, this court affirmed Olopade's conviction and sentence. United States v. Olopade, 205 F.3d 1330 (3d Cir. 1999) (table).

In 2001, Olopade filed a motion for a writ of habeas corpus under 28 U.S.C. § 2255 in the United States District Court for the District of New Jersey. In that motion, Olopade claimed, inter alia, that (1) his sentence violated the principle established in Apprendi v. New Jersey, 530 U.S. 466 (2000), because the quantity of narcotics was not proven to the jury beyond a reasonable doubt; (2) that the indictment was defective because it failed to allege a drug amount; and (3) that his trial counsel was ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). On April 24, 2003, the District Court entered a memorandum and order denying Olopade's motion; thereafter, this court denied Olopade's request for a certificate of appealability ("COA").

In 2004, relying on the Supreme Court's decision in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), Olopade sought this court's authorization under 28 U.S.C. § 2244 to file a second or successive motion to vacate his sentence under 28 U.S.C. § 2255. We denied Olopade's request in an unpublished order dated September 29, 2004.

---

("Booker does not apply retroactively to criminal cases that became final before its release on January 12, 2005."); Gerrish v. United States, 353 F. Supp. 2d 95, 96 (D. Me. 2005) ("Booker . . . [is] not applicable to cases that were not on direct appeal when [it was] decided."); United States v. Johnson, 353 F. Supp. 2d 656, 658 (E.D. Va. 2005) (finding that Booker does "not apply retroactively on collateral review").

In the wake of the Supreme Court's decisions in Booker, Olopade has yet again sought this court's authorization under § 2244 to file a second or successive habeas corpus motion. In his pro se application titled "Request for Permission to File a Second or Successive Petition in the District Court," which was filed with this court on February 28, 2005, Olopade argues that a second or successive § 2255 motion is appropriate in his case because such a motion would rely on new rules of law that were previously unavailable, i.e., the holdings in Booker. In response, the United States, by way of a letter motion dated March 10, 2005, has asked this court to dismiss Olopade's most recent § 2244 request.[2] We will do so.

## II.

As we discussed in more detail in our opinion in United States v. Ordaz, 398 F.3d 236, 238-39 (3d Cir. 2005), the Supreme Court held this term in United States v. Booker that "the Sixth Amendment as construed in Blakely does apply to the [Federal] Sentencing Guidelines." Booker, 543 U.S. at __, 125 S. Ct. at 746 (Stevens, J.). Booker was decided by two opinions of the Court. In the first opinion, authored by Justice Stevens for a majority of five, the Court reaffirmed the holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the

---

[2] On March 28, 2005, Olopade filed a reply to the United States' response. In this reply, Olopade attempts to backpedal somewhat from his February 28, 2005 request. Specifically, Olopade argues that he in fact does not need this court's permission to proceed with his Booker-based motion in the District Court because the claim is not new, second, or successive but is rather the continuation of his Apprendi claim, which was the subject of his initial § 2255 motion. This argument is spurious. The District Court denied Olopade's first § 2255 motion on the merits; this court declined to grant a COA. Thus, a motion filed by Olopade for a writ of habeas corpus, whether premised on Booker or otherwise, would be "second or successive" and therefore must be authorized by this court. See 28 U.S.C. §§ 2244(b)(3), 2255.

4

facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," and the Court extended that rule to the Federal Sentencing Guidelines. Booker, 543 U.S. at ___, 125 S. Ct. at 756 (Stevens, J.). The second opinion, authored by Justice Breyer for a majority of five, focused on the remedy. The Court held that 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act of 1984 that made the Guidelines mandatory, was incompatible with the Court's constitutional ruling; thus, the Court severed and excised § 3553(b)(1). Similarly, 18 U.S.C. § 3742(e), "the provision that set[] forth standards of review on appeal, including de novo review of departures from the applicable Guidelines range," was also severed and excised because it contained critical cross-references to the section that made the Guidelines mandatory. Booker, 543 U.S. at __, 125 S. Ct. at 764 (Breyer, J.). The net result was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines. In his most recent 28 U.S.C. § 2244 application, Olopade seeks to avail himself of the two Booker holdings.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), however, has "greatly restrict[ed] the power of federal courts to award relief to . . . prisoners who file second or successive habeas corpus applications." Tyler v. Cain, 533 U.S. 656, 661 (2001). Specifically, AEDPA mandates that:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain–
>
> > (1) [certain types of newly discovered evidence]; or
> >
> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

5

28 U.S.C. § 2255. The certification process to which § 2255 refers is 28 U.S.C. § 2244(b)(3). Section 2244(b)(3) sets forth the protocols and standards for requests for second or successive habeas corpus applications in the court of appeals. Among other requirements, a prisoner in Olopade's procedural posture must make "a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C) (emphasis added). Thus, § 2255, read in conjunction with § 2244(b)(3)(C), makes explicit that before we can grant Olopade permission to file a second or successive motion in the District Court, he must first make out a "prima facie showing" that his request to file a second or successive motion relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." See generally In re Turner, 267 F.3d 225, 227 (3d Cir. 2001).

This issue is controlled by the decision in Tyler v. Cain, 533 U.S. 656 (2001). In Tyler, the Supreme Court held that "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." 533 U.S. at 663 (internal quotations omitted).[3] After Tyler, the relevant

_____

[3] In Tyler, the Court decided the fate of a state prisoner who was seeking collateral relief under 28 U.S.C. § 2254 in the federal courts. Thus, the Tyler Court addressed 28 U.S.C. § 2244(b)(2) rather than the above-quoted language from 28 U.S.C. § 2255. The relevant portion of § 2244(b)(2), however, is identical to the section of § 2255 that is implicated in this case. Compare 28 U.S.C. § 2244(b)(2) ("A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable . . . .") (emphasis added), with 28 U.S.C. § 2255 ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

6

question is not whether the Supreme Court should make a case applicable retroactively to cases on collateral review but whether it has done so; likewise, it is insufficient that two or more of the Court's decisions read together merely suggest that a rule has retroactive effect. Rather, the Supreme Court must have explicitly held, or two or more of its decisions when read together must absolutely dictate, that a particular rule is retroactively applicable to cases on collateral review. In re Turner, 267 F.3d at 229.

It is clear that the Supreme Court has not expressly held that Booker is applicable to cases on collateral review. In the Booker decision itself, the Court did not mention collateral review and only expressly applied its holdings to cases on direct appeal. Booker, 125 S. Ct. at 769 (Breyer, J.) ("[W]e must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review.").[4] And, in no subsequent case has the Supreme

_____

Court, that was previously unavailable.") (emphasis added). Due to this identity of language, we have applied the Tyler holding to federal prisoners seeking to file second or successive habeas applications. See In re Turner, 267 F.3d 225, 227-28 (3d Cir. 2001).

[4] After Booker issued on January 12, 2005, this court, of course, has applied the Booker rules to cases that were then pending on direct review. See, e.g., United States v. Ordaz, 398 F.3d 236, 239 (3d Cir. 2005); United States v. Davis, 397 F.3d 173, 183 (3d Cir. 2005). Olopade suggests that applying Booker to cases that were pending on direct appeal as of January 12, 2005 but not to those cases that were on collateral review as of that date would deny prisoners seeking collateral review the equal protection of the law. There is, however, an important distinction between cases on direct appeal and those on collateral review. See Teague v. Lane, 489 U.S. 288, 305-09 (1989) (O'Connor, J.). Simply put, because prisoners seeking collateral review are not similarly situated to prisoners whose cases are on direct appeal, it is constitutionally permissible to apply different rules to the two different categories of prisoners.

7

Court addressed, let alone decided, whether <u>Booker</u> has retroactive effect. <u>See</u> <u>Bey</u>, 399 F.3d at 1269 ("The Court decided <u>Booker</u> on direct appeal and did not expressly declare, nor has it since declared, that <u>Booker</u> should be applied retroactively to cases on collateral review.").

Of course, "just because the [Supreme] Court has never specifically considered the retroactivity of [a particular decision] does not foreclose the possibility that the Court has 'made' [the decision] retroactive on collateral review." <u>In re Turner</u>, 267 F.3d at 229. Rather, as noted above, an amalgam of Supreme Court holdings could have "made" <u>Booker</u> applicable retroactively to cases on collateral review if the holdings, when read together, "<u>dictate</u>" such a result. <u>In re Turner</u>, 267 F.3d at 229.

Here, however, there is no combination of Supreme Court decisions that "dictates" that <u>Booker</u> has retroactive force on collateral review; indeed, the most analogous Supreme Court case, <u>Schriro v. Summerlin</u>, 542 U.S. __, 124 S. Ct. 2519 (2004), strongly suggests precisely the opposite. In <u>Schriro</u>, the Court held that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), in which the Court applied <u>Apprendi</u> and found unconstitutional the provisions of the State of Arizona's death penalty sentencing scheme that allowed a judge rather than a jury to find aggravating factors, did not announce a "watershed rule[ ] of criminal procedure" applicable retroactively to cases on collateral review. <u>Schriro</u>, 542 U.S. at __, 124 S. Ct. at 2524; <u>accord</u> <u>United States v. Swinton</u>, 333 F.3d 481, 491 (3d Cir. 2003) ("[W]e hold that <u>Apprendi</u> does not apply retroactively to cases on collateral review."). Considering that <u>Booker</u>, like <u>Ring</u>, is simply the application of the principles of <u>Apprendi</u> to a particular subject, we conclude that the <u>Schriro</u> holding strongly suggests that <u>Booker</u> is likewise not retroactively applicable to cases on collateral review. <u>See</u> <u>McReynolds</u>, 397 F.3d at 480 ("Although the Supreme Court did not address the retroactivity question in <u>Booker</u>, its decision in <u>Schriro</u> . . . is all but

8

conclusive on the point.").[5]

In conclusion, we will deny Olopade's request for leave to file a second or successive habeas corpus motion because he cannot make a "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), that Booker constitutes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255.

Of course, our holding today does not address the underlying merits of Olopade's claims under Booker.[6]  In such a situation, it is appropriate to deny Olopade's request to file a second or successive motion without prejudice in the event that the Supreme Court subsequently makes Booker retroactive to cases on collateral review.  See In re Turner, 267 F.3d at 231.[7]

---

[5]  In his March 28, 2005 reply, Olopade avers that Booker is actually an extension of the rule of In re Winship, 397 U.S. 358 (1970), a decision which the Supreme Court held to apply retroactively in Ivan V. v. City of N.Y., 407 U.S. 203, 204 (1972). Pointing to the retroactive effect of Booker's putative pedigree, he argues that Booker is similarly retroactively applicable.  This argument, however, is more-or-less foreclosed by our decision in In re Turner, in which we rejected the argument that because Apprendi is arguably an extension of In re Winship, Apprendi similarly applies retroactively to cases on collateral review.  In re Turner, 267 F.3d at 230-31.  To paraphrase our conclusion in In re Turner, the most Olopade can claim with his In re Winship argument is that the Supreme Court should make Booker retroactive to cases on collateral review, not that existing precedents, such as Ivan V., dictate that result.  In re Turner, 267 F.3d at 231.

[6]  Likewise, our dictum aside, we leave for another day the question whether Booker applies retroactively to prisoners who were in the initial § 2255 motion stage as of January 12, 2005.

[7]  In its letter motion dated March 10, 2005, the United States urged that a without prejudice dismissal is the appropriate

## III.

For these reasons, we will deny without prejudice Olopade's application for permission to file a second or successive habeas corpus motion and will grant the United States' motion to dismiss.

outcome.