

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2003

# USA v. Swinton

Precedential or Non-Precedential: Precedential

Docket No. 01-1004

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Swinton" (2003). *2003 Decisions.* Paper 404.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/404

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 23, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1004

UNITED STATES OF AMERICA

v.

ANDRE SWINTON,
*Appellant*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cr-00008-1)
District Judge: Hon. Harvey Bartle, III

Submitted Under Third Circuit LAR 34.1(a)
December 19, 2002

Before: SLOVITER, McKEE, and ROSENN, *Circuit Judges*

(Filed June 23, 2003)

David Rudovsky
Kairys, Rudovsky, Epstein &
 Messing
Philadelphia, PA 19l07

Attorney for Appellant

Patrick L. Meehan
  United States Attorney
Laurie Magid
  Deputy United States Attorney
  for Policy and Appeals
Craig Margolis
  Assistant United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney
  Senior Appellate Counsel
Robert K. Reed
Office of United States Attorney
Philadelphia, PA 19l06

Attorneys for Appellee

## OPINION OF THE COURT

SLOVITER, *Circuit Judge*.

The issue presented in this appeal is whether the rule of law announced by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies retroactively to cases on collateral review. The courts of appeals that have considered the issue have uniformly held that *Apprendi* does not apply retroactively to cases on collateral review. We also so hold. *See also United States v. Jenkins*, No. 01-1722 (3d Cir. June 18, 2003).

I.

BACKGROUND

Appellant Andre Swinton was charged with various drug offenses in a six-count superseding indictment returned in 1994. He was found guilty after a jury trial of one count of conspiracy to distribute more than fifty grams of cocaine base (crack), in violation of 21 U.S.C. § 846 (Count One), one count of distribution of more than fifty grams of cocaine base (crack) within 1,000 feet of a school, in violation of 21 U.S.C. § 860 (Count Three), two counts of

distribution of more than fifty grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) (Counts Four and Five), and retaliation against a witness/informant in violation of 18 U.S.C. § 1513 (Count Six).

The District Court sentenced Swinton to 324 months incarceration on Counts One, Three, Four, and Five, and 120 months incarceration on Count Six, all terms to run concurrently, followed by ten years of supervised release. It also imposed a $5,000 fine and a $250 special assessment. On appeal, this court affirmed the judgment and sentence. *United States v. Swinton*, 151 F.3d 1027 (3d Cir. 1998) (unpublished table decision). The United States Supreme Court denied Swinton's petition for a writ of certiorari on October 5, 1998. *Swinton v. United States*, 525 U.S. 857 (1998).

On August 12, 1999, within a year of the final judgment in his case, Swinton filed a *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, raising various ineffective assistance of counsel claims. However, because Swinton did not properly complete the requisite forms for filing a § 2255 motion, the District Court ordered him to do so within thirty days. Swinton did file the necessary forms on October 8, 1999, but once again he failed to follow the requisite procedure. Instead of listing his grounds for relief on the § 2255 motion form as required by the local rules, Swinton referred the court to an attached memorandum. The District Court dismissed the motion without prejudice. On November 29, 1999, only slightly more than two weeks after the District Court's dismissal, Swinton filed another § 2255 motion setting forth his ineffective assistance of counsel claims on the motion form and, on August 2, 2000, the District Court ordered the Government to file a response.

On September 8, 2000, before the Government filed its response, Swinton filed a document titled "Supplement to Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255" (the "Supplemental Motion") in which he moved the District Court to allow him to incorporate an additional issue into his § 2255 motion. Swinton claimed that his rights to due process and a jury trial were violated because the jury was instructed that the

Government need not prove the quantity and identity of the drugs involved in his case. Although not mentioned in his filing, this claim was based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), decided June 26, 2000, less than three months earlier. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

The Government filed a response to the § 2255 motion, contending that there was no merit to Swinton's ineffective assistance of counsel claims. The Government further argued that the Supplemental Motion should be denied because *Apprendi* has not been made retroactive to cases on collateral review, and accordingly the Supplemental Motion was time-barred under the statute of limitations provision of § 2255. Also, it argued that even if *Apprendi* were applicable, Swinton's claim would fail because the District Court did not commit plain error in sentencing Swinton based on a drug quantity that was supported by credible and undisputed evidence.

The District Court held that the November 29, 1999 § 2255 motion was untimely because Swinton filed it more than one year after his judgment of conviction became final. In the alternative, it ruled that Swinton's ineffective assistance of counsel claims lacked merit. The District Court also ruled that Swinton's Supplemental Motion raising his *Apprendi* claim is a second or successive § 2255 motion that requires authorization from this court before it can be filed in the District Court. It denied the Supplemental Motion without prejudice and with leave to file the necessary motion in this court. Swinton filed a timely notice of appeal and a request for a certificate of appealability with this court.

We granted a certificate of appealability limited to the following issues:

> (1) [W]hether the language "made retroactively applicable to cases on collateral review" in the statute of limitations set forth in 28 U.S.C.

§ 2255(3) is distinguishable from the language "made retroactive to cases on collateral review by the Supreme Court" in the requirement for authorization to file a second or successive Section 2255 motion, as that language was discussed in *Tyler v. Cain*, 121 S.Ct. 2478 (2001) and *In re: Turner*, 267 F.3d 225, 227-28 (3d Cir. 2001).

(2) If the language is distinguishable, is the Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), retroactively applicable on collateral review, and does it make Swinton's Supplemental Section 2255 motion timely under § 2255(3).

The court appointed counsel to represent Swinton.[1]

## II.

## JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a). We review issues of statutory interpretation de novo. *Kapral v. United States*, 166 F.3d 565, 567 (3d Cir. 1999).

## III.

## DISCUSSION

### A.   Statute of Limitations Under 28 U.S.C. § 2255

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year period of limitation applies to a motion to vacate a sentence filed under § 2255. Paragraph 6 of § 2255 provides that the limitation period shall run from the latest of:

---

1. Although the parties address in their briefs the issue of whether the Supplemental Motion is second or successive, we did not grant a certificate of appealability on this issue and thus we will not address it.

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) *the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review*; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (emphasis added).

Swinton filed his Supplemental Motion more than one year after his judgment of conviction became final. However, because he claims a violation of *Apprendi*, Swinton argues that the Supplemental Motion was timely under subparagraph (3) above because he filed it within a year after *Apprendi* was decided. Swinton can take advantage of that provision only if *Apprendi* creates a "right [that] has been [1] newly recognized by the Supreme Court and [2] made retroactively applicable to cases on collateral review." *Id.*

In *Apprendi*, defendant, who pled guilty to various state firearm offenses, was sentenced to an enhanced sentence under the New Jersey hate crime law. That statute provides for an extended term of imprisonment if the trial judge finds by a preponderance of the evidence that the defendant acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity. In the state courts and then in the Supreme Court of the United States, Apprendi challenged the constitutionality of the statute, arguing that "the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must be proved to a jury

beyond a reasonable doubt." *Apprendi*, 530 U.S. at 471. The Supreme Court agreed and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

The decision in *Apprendi* impacts both the statutory provision in paragraph 6 of 28 U.S.C. § 2255, which requires tolling the statute of limitations for certain claims of new rights recognized by the Supreme Court, and paragraph 8 of § 2255, which requires that second or successive claims must be certified by the court of appeals before they can be filed in the district courts. There are several requirements under each of those provisions and the language is somewhat different. Under paragraph 6 the right at issue must have been "newly recognized by the Supreme Court" whereas paragraph 8 refers to "a new rule of constitutional law." 28 U.S.C. § 2255.

The parties do not dispute that *Apprendi* establishes a constitutional right under the applicable language of both provisions. In *Ashley v. United States*, 266 F.3d 671, 672 (7th Cir. 2001), where the court construed paragraph 6, the same issue before us, i.e. when the statute of limitations begins to run on newly recognized rights, the court stated, "[n]o one could doubt that *Apprendi* 'newly' or 'initially' recognizes a constitutional right. *Apprendi* caused this court to overrule numerous cases, a sign that something novel occurred." In *In re Turner*, 267 F.3d 225, 227-28 (3d Cir. 2001), this court considered the related issue under paragraph 8 of section 2255 and concluded that *Apprendi* establishes a "new rule of constitutional law" for purposes of filing a second or successive habeas application pursuant to 28 U.S.C. §§ 2255 and 2244.

Having concluded that *Apprendi* recognized a new rule of constitutional law, we reach the issue of the retroactive application of *Apprendi* and must first decide whether that is an issue reserved to the Supreme Court or whether the lower federal courts also have authority to determine whether *Apprendi* can be applied retroactively to cases on collateral review. In *Turner*, where, as noted above, the issue arose in the context of a second or successive motion,

we denied the petitioner authorization to file a second § 2255 motion because the Supreme Court had not made *Apprendi* retroactive to cases on collateral review. *Id.* at 231. The language of paragraph 8 is explicit as it refers to "a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*, . . ." 28 U.S.C. § 2255 ¶ 8 (emphasis added). By the time of the *Turner* opinion, the Supreme Court had already decided in *Tyler v. Cain*, 533 U.S. 656, 663 (2001), that it is the only court that can make a new rule retroactive for purposes of filing a second or successive habeas corpus application. In *Tyler*, the Court was construing § 2244(b)(2)(A), which applies to state prisoners, and which contains the same language as in § 2255, which applies to federal prisoners. Our decision in *Turner* followed as a matter of course.

*Tyler* is not dispositive of the issue before us because of the difference in the language between paragraph 6 and paragraph 8. Paragraph 6 merely states that the limitation period shall run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review [.]" 28 U.S.C. § 2255. Significantly, paragraph 6 does not include the phrase "by the Supreme Court" when referring to the retroactivity decision.

It was this difference in statutory language that led the Court of Appeals for the Seventh Circuit to hold that courts of appeals and district courts may determine whether a novel decision of the Supreme Court applies retroactively, and thus whether a collateral attack is timely under § 2255. *Ashley*, 266 F.3d at 673-74. The reasoning of the *Ashley* court is persuasive and, because we cannot improve it, we adopt it:

> An *initial* petition may be filed within a year of a decision that is "made retroactively applicable to cases on collateral review[.]" A *second* petition, by contrast, depends on "a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*" (emphasis added). Both statutes make it clear that only the Supreme Court may issue the new decision. But who decides whether that new decision

> applies retroactively? The first formulation ("made retroactive") leaves that question open. The second formulation ("made retroactive . . . by the Supreme Court") answers it. To treat the first formulation as identical to the second is not faithful to the difference in language. By omitting the restriction contained in ¶ 8(2), ¶ 6(3) implies that courts of appeals and district courts may "make" the retroactivity decision. *Tyler* concludes that the word "made" in ¶ 8(2) means "held." ___ U.S. at ___, 121 S.Ct. at 2483. District and appellate courts, no less than the Supreme Court, may issue opinions "holding" that a decision applies retroactively to cases on collateral review. The jurisdictional (and precedential) scope of that holding differs, but it is a holding nonetheless.

*Id.* at 673.

The court set forth three reasons justifying the difference between the statute of limitations and the second or successive provisions. First, permitting a district or appellate court to make the retroactivity decision for an initial petition may be essential to put the question before the Supreme Court for final resolution. *Id.* It asked, "[h]ow else would a retroactivity question get before the Supreme Court so that it could make the decision that would in turn authorize second or successive petitions?" *Id.* Second, a court of appeals only has thirty days to decide whether a second or successive petition may be filed. *Id.* In contrast, no such time limit applies to an initial petition for collateral review and courts have time to conduct a retroactivity analysis. *Id.* Finally, the conditions for filing successive petitions are substantively and procedurally more restrictive because the prisoner has already had one opportunity to raise his collateral claims. *Id.*

Similarly, in *United States v. Lopez*, 248 F.3d 427 (5th Cir.), *cert. denied*, 534 U.S. 898 (2001), the court of appeals was required to decide whether it could make the retroactivity determination of *Richardson v. United States*, 526 U.S. 813 (1999), the Supreme Court's decision holding a jury must be instructed to reach a unanimous verdict on each of the specific violations that comprise the "continuing series of violations" charged as a continuing criminal

enterprise. Using reasoning similar to that in *Ashley*, the court, noting the omission of the words "by the Supreme Court" in paragraph 6 of § 2255, the statute of limitations provision, held that "§ 2255(3) does not require that the retroactivity determination must be made by the Supreme Court itself." *Lopez*, 248 F.3d at 432; *see also Garcia v. United States*, 278 F.3d 1210, 1212-13 (11th Cir.) (assuming that the Supreme Court need not make the retroactivity determination required in the statute of limitations provision and recognizing cases holding same), *cert. denied*, 123 S. Ct. 180 (2002).

The Supreme Court also has stated that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (citations omitted). In *Duncan*, the Supreme Court considered whether a federal habeas corpus petition is an "application for State post conviction or other collateral review" for purposes of tolling the statute of limitations under 28 U.S.C. § 2244(d)(2). *Id.* at 169. In construing the statutory language and concluding that Congress did not intend federal petitions to toll the limitation period, the Court explained that Congress used both the words "State" and "Federal" to denote state and federal proceedings in other portions of the statute. *Id.* at 172. The same principle applies here.

We conclude — and the parties agree — that the statute of limitations provision of § 2255 allows district courts and courts of appeals to make retroactivity decisions. We turn now to whether *Apprendi* applies retroactively to cases on collateral review.

### B.   *Apprendi* Retroactivity Analysis

When analyzing the retroactivity of a new rule of law, we must decide whether the rule is substantive or procedural in nature because " 'the Supreme Court has created separate retroactivity standards for new rules of criminal procedure and new decisions of substantive criminal law.' " *Turner*, 267 F.3d at 229 (quoting *United States v. Woods*, 986 F.2d 669, 676 (3d Cir. 1993)). "Under the substantive

retroactivity standard, the appropriate inquiry is whether the claimed legal error was a 'fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it presents exceptional circumstances where the need for the remedy afforded' by collateral relief is apparent.' " *Turner*, 267 F.3d at 229 (citations omitted).

In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court set forth the general principles regarding retroactivity for new rules of criminal procedure. It explained that because of the interest in finality of judgments in the criminal justice system, a new rule of criminal procedure does not apply retroactively to cases that have become final before the new rule is announced. *Id.* at 309-10. There are two narrow exceptions. A new rule of criminal procedure will apply retroactively if it (1) places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe; or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty. *Id.* at 311. *Teague*'s second exception is reserved for watershed rules of criminal procedure that not only improve the accuracy of trial, but also " 'alter our understanding of the *bedrock procedural elements*' " essential to the fairness of a proceeding. *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (citations omitted).

Swinton, seeking the retroactive application of *Apprendi*, argues that *Apprendi* announced a rule of substantive criminal law and that *Teague* is inapplicable. He contends that *Apprendi* redefines when a particular fact is deemed to be an element of an offense and argues that the fact that *Apprendi* has the procedural consequence of proof to a jury beyond a reasonable doubt does not render it a rule of procedure. Swinton states, "it is illogical to say that this procedural implication is *Apprendi*'s 'new rule,' because it has always been the case that a defendant is entitled to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Appellant's Br. at 22-23. The Government, on the other hand, argues that *Apprendi* is a new rule of criminal procedure that does not apply retroactively under *Teague*. It states that *Apprendi* did not address the substance of a statute but "merely established the necessary procedures

for establishing those facts" which increase the penalty for a crime. Appellee's Br. at 38.

The courts of appeals that have considered this issue have held that *Apprendi* establishes a procedural rule. In *United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002), *cert. denied*, 2003 WL 1609400 (U.S. Apr. 28, 2003), for example, the court held that the principles articulated in *Teague* were applicable to *Apprendi* claims asserted on collateral review and that *Apprendi* does not apply retroactively to initial motions under § 2255. In so holding, the court rejected the petitioner's argument that the rule announced in *Apprendi* is substantive, rather than procedural. *Id.* at 307-09. It relied on the Supreme Court's own description in *Apprendi* of the issue before it as procedural, where the Court stated that " '[t]he substantive basis for New Jersey's [sentencing] enhancement is thus not at issue; the adequacy of New Jersey's procedure is.' " *Id.* at 308 (quoting *Apprendi*, 530 U.S. at 475). The *Brown* court also noted that in *Apprendi* the Court stated that having the jury decide the elements of an offense under a reasonable doubt standard " 'has a vital role in our *criminal procedure* for cogent reasons.' " *Id.* (quoting *Apprendi*, 530 U.S. at 484). The court in *Brown* further explained that *Apprendi* focused on the right to have a jury decide whether the sentence should be enhanced, not whether the enhancement was essential to a conviction. *Id.* In other words, *Apprendi* did not change what the government must prove, it only changed the requirement that it must be the jury, rather than the judge, who decided the question of drug quantity. *Id.* at 309.

Similarly, in *Curtis v. United States*, 294 F.3d 841 (7th Cir.), *cert. denied*, 123 S.Ct. 451 (2002), the court stated,

> Yet *Apprendi* is about nothing but procedure — who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt). *Apprendi* does not alter which facts have what legal significance, let alone suggest that conspiring to distribute marijuana is no longer a federal crime unless the jury finds that some particular quantity has been sold.

. . .

> Because *Apprendi* is concerned with the identity of the decision-maker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful, it identifies a new rule of criminal procedure that falls within the set of legal changes to which the *Teague* standard applies.

294 F.3d at 843; *see also McCoy v. United States*, 266 F.3d 1245, 1257 n.16 (11th Cir. 2001) ("The application of *Apprendi* merely changes the method or procedure for determining drug quantity and [McCoy's] sentence; it does not make McCoy's conduct not criminal[.]"), *cert. denied*, 536 U.S. 906 (2002); *United States v. Sanders*, 247 F.3d 139, 147 (4th Cir.) ("*Apprendi* constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial."), *cert. denied*, 534 U.S. 1032 (2001).

We agree with our sister circuits that *Apprendi* announced a new rule of criminal procedure, as has the panel in *Jenkins*, No. 01-1722 (3d Cir. June 18, 2003), an opinion filed last week. Thus, we must apply a *Teague* analysis to determine whether *Apprendi* applies retroactively on collateral review.

As stated above, *Teague* enunciated the principle that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. The Supreme Court explained that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* at 301. It stated, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.*

In its opinion in *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994), the Supreme Court set forth the steps a federal court should take when faced with a habeas petition seeking relief based on a rule announced after the defendant's conviction became final. The court must survey " 'the legal landscape' " as it existed on the date the

defendant's conviction became final and then determine if a " 'court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.' " *Id.* (citations omitted). Even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the non-retroactivity principle set forth above. *Id.*

Although Swinton does not argue that *Apprendi* did not announce a "new rule" for purposes of a *Teague* analysis, we will address this issue briefly. At the time Swinton's conviction became final on October 5, 1998, the Supreme Court had held that a state did not need to prove the existence of a sentencing factor beyond a reasonable doubt. *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86 (1986). It was the general understanding of federal courts that drug quantity was a sentencing factor to be determined by the judge based on a preponderance of the evidence. *See Sanders*, 247 F.3d at 147 (citing cases). Thus, at the time Swinton's conviction became final, a reasonable jurist would not have felt compelled to rule that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

The decision in *Apprendi*, of course, dramatically changed that understanding. Accordingly, courts considering this issue have held that *Apprendi* established a "new rule" under *Teague*. In *McCoy*, the Court of Appeals for the Eleventh Circuit concluded that the rule in *Apprendi* was not dictated by precedent existing before *Apprendi* was decided, and that before *Apprendi*, the courts of appeals had been upholding sentences that were greater than the otherwise applicable maximum sentences based on a drug quantity not charged in the indictment, submitted to the jury and proved beyond a reasonable doubt. 266 F.3d at 1256; *see also United States v. Moss*, 252 F.3d 993, 997 (8th Cir. 2001) ("*Apprendi* is obviously a 'new rule' subject to the general rule of non-retroactivity."), *cert. denied*, 534 U.S. 1097 (2002); *Sanders*, 247 F.3d at 147. We also hold now that *Apprendi* established a new rule for purposes of

*Teague*. Because *Apprendi* had not been decided at the time Swinton's conviction became final, it does not apply retroactively on collateral review unless it satisfies one of *Teague*'s two narrow exceptions.

Swinton argues that *Teague*'s second exception, that the new rule requires the observance of those procedures that are implicit in the concept of ordered liberty, applies. Other courts of appeals that have addressed this issue have consistently held to the contrary. In *Brown*, for example, the Court of Appeals for the Fifth Circuit agreed with the reasoning of those courts that the rule in *Apprendi* is not a "watershed" rule that improved the accuracy of determining the guilt or innocence of a defendant. 305 F.3d at 309. Rather, the accuracy improved by *Apprendi* is in the imposition of a proper sentence, and *Apprendi* did not alter our understanding of bedrock elements essential to a fundamentally fair proceeding. *Id.*

Similarly, in *Curtis*, the Court of Appeals for the Seventh Circuit addressed whether the rights identified in *Apprendi* are so fundamental that any system of ordered liberty is obliged to include them. 294 F.3d at 843. The court looked to the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781 (2002), where the defendants argued on direct appeal that their sentences were invalid under *Apprendi* because the drug quantity was not alleged in the indictment or submitted to the petit jury. Applying a plain error standard of review, the Supreme Court held that the error did not seriously affect the fairness, integrity or public reputation of the judicial proceedings given the overwhelming and undisputed evidence that the defendants were involved in a vast drug conspiracy. 122 S. Ct. at 1786-87. Because an *Apprendi* violation does not necessarily undermine the fairness of judicial proceedings, the court in *Curtis* concluded that *Apprendi* did not alter a bedrock rule of procedure. *Curtis*, 294 F.3d at 843-44.

The Court of Appeals for the Eighth Circuit reached the same conclusion in *Moss*. The court stated that the accuracy element of the watershed exception derives from the function of habeas corpus to " 'assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be

convicted.'" 252 F.3d at 998-99 (quoting *Teague*, 489 U.S. at 312). It questioned whether *Apprendi* increases the reliably of the guilt-innocence determination at all because the rule does not protect the innocent from conviction, but limits the sentencing exposure of those who have been validly convicted. *Id.* at 999. The court further noted the narrow application of this exception and concluded that *Apprendi* does not impart a fundamental procedural right that is a necessary component of a fair trial. *Id.*; *see also United States v. Sanchez-Cervantes*, 282 F.3d 664, 670 (9th Cir.) ("Sending the drug quantity determination to the jury cannot be fundamental to the fairness of the proceeding if the judge is allowed to make such findings in some circumstances."), *cert. denied*, 123 S. Ct. 48 (2002); *United States v. Mora*, 293 F.3d 1213, 1219 (10th Cir.) (noting that *Apprendi* is "clearly not on the same level as a truly landmark decision such as *Gideon [v. Wainwright,* 372 U.S. 335 (1963)]."), *cert. denied*, 123 S. Ct. 388 (2002); *McCoy*, 266 F.3d at 1258 (holding *Apprendi* does not satisfy second exception in *Teague*); *Sanders*, 247 F.3d at 151 (same). Just recently, the Court of Appeals for the Second Circuit joined this array. *Coleman v. United States*, 2003 U.S. App. LEXIS 8646 (2d Cir. May 7, 2003).

I do not differ with the view, expressed in Judge Rosenn's dissent, of the importance to a criminal defendant of the protections that the *Apprendi* decision requires the courts to provide. In fact, it was that view that led me to dissent from the majority of the en banc court in *United States v. Vazquez*, 271 F. 3d 93, 117 (3d Cir. 2001) (Sloviter, J., dissenting), *cert. denied*, 536 U.S. 963 (2002), when it held that the *Apprendi* violations did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because the court concluded that a jury would have found, beyond a reasonable doubt, that the required amount of drugs was involved. I wrote, for the minority of the en banc court, that the increase in prison time that resulted after the *Apprendi* violation affected the defendant's substantial rights. But I was not writing for the court.

Although the issue before us now is a different one, a similar issue arises in considering whether to apply the

exception to *Teague* for fundamental rights. I gather that Judge Rosenn would treat the *Apprendi* rights in that fashion. But our en banc court has not done so. Nor has any of our sister circuits done so. Nothing in the panel decision of our court on which Judge Rosenn relies, *Woods v. United States*, 986 F.2d 669 (3d Cir. 1993), suggests that we should do so.

We agree with these courts that *Apprendi* does not satisfy *Teague*'s second exception to non-retroactivity. Accordingly, we hold that *Apprendi* does not apply retroactively to cases on collateral review.[2]

## IV.

## CONCLUSION

For the reasons discussed above, we will affirm the order of the District Court denying Swinton's Supplemental Motion, albeit for different reasons than given by the District Court.

---

2. Because *Apprendi* does not apply retroactively to cases on collateral review, we need not further address whether Swinton's Supplemental Motion raising the *Apprendi* claim was timely.

*ROSENN, Circuit Judge*, dissenting:

At stake in this appeal is not merely a decision on an important question of law, but the right of a defendant to challenge his sentence for crimes for which he was not convicted by a jury. The majority concludes that the decision of the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), decided while Swinton's *pro se* motion to vacate or correct his sentence was pending, had no retroactive effect on his amended motion presenting his *Apprendi* claim. I am constrained to disagree. Although the majority applies decisions of several other courts of appeals that have reached a similar conclusion, I believe that their decisions are flawed and inconsistent with the precedent of our court. They give inappropriate weight to the right to a jury trial and the beyond-a-reasonable-doubt standard as constitutional bulwarks of fairness and the presumption of innocence. I, therefore, respectfully dissent.

## I.

According to the statutory scheme of 21 U.S.C. § 841 under which Swinton was convicted, a defendant guilty of distributing even a minimal amount of a controlled substance is subject to a maximum sentence of twenty years imprisonment. Under § 841(b)(1)(B) of the statute, a defendant guilty of distributing more than 500 grams of cocaine is subject to a maximum sentence of forty years. A defendant guilty of distributing 50 grams of cocaine base (crack), or more than 5 kilograms of cocaine, is subject to a maximum sentence of life imprisonment under § 841(b)(1)(A). Thus, the drug type and the quantity of the drug distribution can mean *twenty or more* additional years of lost liberty.

Prior to *Apprendi*, to convict under the enhanced-penalty provisions of § 841, once the existence of *some* quantity of *some* controlled substance is proven to the jury, the Government had to prove the precise drug type and quantity only before the sentencing judge and then only by a preponderance of the evidence. *See United States v. Monk*, 15 F.3d 25, 27 (2d Cir. 1994). *Apprendi* held that consistent with the Sixth and Fourteenth[1] Amendments of

---

1. In the case of a federal criminal proceeding, the controlling principle is the Fifth Amendment due process clause, rather than the Fourteenth.

our Constitution, a defendant is entitled to a jury finding on each element of a crime that increases his or her maximum statutory sentence. In the case of § 841 prosecutions occurring after *Apprendi*, the Government unquestionably must prove the drug type and quantity beyond a reasonable doubt before a jury in order to obtain a correspondingly enhanced sentence. *See United States v. Vazquez*, 271 F.3d 93, 96 (3d Cir. 2001) (en banc) (holding that post-*Apprendi*, drug quantity is an element of the offense to be proven to jury). The critical question here is whether this change ought to be applied retroactively to convictions such as Swinton's, occurring before the rule was announced.[2]

By way of background I note the following facts. Although the issues of drug type and quantity were placed before the jury in Swinton's trial, the jury instructions were vague and inconsistent as to the standard of proof required for these elements. At times, the judge told the jury that it had to find beyond a reasonable doubt that the drug was crack and that the amount was over 50 grams in order to impose a more serious sentence. However, at another point in the jury instructions, the judge stated, "It's sufficient if the evidence is shown that he knew the substance was one of the drugs whose distribution Congress has made unlawful." The jury was also told it could find the existence of the requisite quantum of drugs if the Government showed the accuracy of the alleged amount "with a reasonable degree of certainty."

At sentencing, Swinton contested the sufficiency of the evidence as to drug type. The trial judge convened a hearing, at which witnesses were called, to determine whether the drug in question was crack. At this sentencing hearing, the Government asserted that its burden was a preponderance of the evidence. Although it was unclear what standard he applied, the judge found that the

---

2. The issue specified in the Certificate of Appealability is strictly a legal one, whether *Apprendi* should be applied retroactively. It would, therefore, be a matter for the District Court, if *Apprendi* were deemed retroactive, to determine whether Swinton's sentence should be corrected or whether he should be granted a new trial.

evidence "overwhelmingly" showed that the drug in question was crack.

## II.

Deeply embedded in our constitutional jurisprudence is the proposition that a defendant may not be punished for a crime unless every element thereof is proven to a jury beyond a reasonable doubt: "[T]he proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6, [t]aken together, . . . indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 476-77 (*citing United States v. Gaudin*, 515 U.S. 506, 510 (1995)) (alterations in original). *Apprendi* addressed the novel issue of whether, once a jury finds guilt of an underlying offense, additional facts that determine the defendant's maximum statutory sentence can be left for the judge to decide by a preponderance of the evidence, or whether they too are elements of the crime to be determined by the jury by proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 500 (Scalia, J., concurring).

The Supreme Court concluded that a factual determination made after a defendant's conviction of an underlying offense that dictates maximum statutory sentence goes to "the degree of criminal culpability" for the offense and is therefore an element of the crime that must be proven beyond a reasonable doubt before a jury. The threat of heightened sentence is indistinguishable from the threat of conviction for a separate offense:

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of [the

constitutional] protections that have, until that point, unquestionably attached.

*Apprendi*, 530 U.S. at 484. In some cases, many years of additional imprisonment hang on the determination of the enhanced sentencing factors.

The right to a jury trial and the beyond-a-reasonable-doubt standard of proof "provide concrete substance for the presumption of innocence, and . . . reduce the risk of imposing . . . deprivations erroneously." *Apprendi*, 530 U.S. at 484 (internal citations and quotations omitted). The protections extend to enhanced maximum penalties, just as surely as to an "underlying" offense, because a defendant should "never get *more* punishment than he bargained for when he did the crime." *Id.* at 498 (Scalia, J., concurring) (emphasis in original). Before the Court announced the *Apprendi* rule, then, defendants were subject to a constitutionally intolerable risk of being sentenced for a period of time in excess of the legislatively prescribed sentence.

Thus, Congress, by making a defendant's liberty contingent on drug type and quantity in § 841 prosecutions, effectively mandated that these elements be proven to a jury, because our Constitution bars the deprivation of liberty on any other basis. *See Apprendi*, 530 U.S. at 494 n.19. ("[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."). Because our Constitution entrusts the jury to ascertain the truth of all criminal allegations and does not permit conviction based on anything less than a jury finding (unless there is a waiver of jury trial) of all relevant facts beyond a reasonable doubt, drug type and quantity must be submitted to the jury.

### III.

As the majority correctly observes, the § 2255 retroactivity inquiry generally involves a preliminary determination of whether the new rule is substantive or

procedural, because different retroactivity analyses apply depending on its categorization.[3] In *Davis v. United States*, 417 U.S. 333 (1974) the Supreme Court suggested that failure to retroactively apply *substantive* new rules, "inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." *Id.* at 346-47 (1974) (internal quotations omitted). Unlike substantive new rules, which are essentially automatically retroactive, *Teague v. Lane*, 489 U.S. 288 (1988), set forth very narrow criteria under which a procedural rule ought to be given retroactive effect. The Court held that an exception to the general rule forbidding retroactivity would be a "watershed" new rule raising an issue of fundamental fairness that is "implicit in the concept of ordered liberty." *Id.* at 307, 311. The Court also noted that it could envision very few such new rules that had not yet come into existence. *Id.* at 313. Unless a new procedural rule falls within this exception to the general rule, it "will not be applicable to those cases which have become final before the new rule[] [is] announced."[4] *Id.* at 310.

The threshold question before us then, is whether *Apprendi* is substantive or procedural. In *Davis*, the Court deemed substantive a new rule under which "[defendant's] conviction and punishment are for an act that the law does not make criminal." *Davis*, 417 U.S. at 346. *Bousley v. United States*, 523 U.S. 614 (1998) reiterated the paradigmatic "substantive" new rule: it held that Supreme Court decisions altering the "substantive" terms of a federal statute, i.e., which hold that a statute "does not reach certain conduct . . . [,] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal," and were to be applied retroactively. *Id.* at 620 (internal citations and quotations

3. As the majority correctly holds, the instant case announces a new rule because it imposes upon the prosecution a new obligation to prove beyond a reasonable doubt to a jury that the defendant committed the enhancing factors that warranted additional sentencing.

4. *Teague* also set forth another exception, involving rules which place certain primary conduct beyond the power of the legislature to proscribe. This exception has no relevance to this case.

omitted). Procedural new rules are generally characterized by the introduction of novel mechanisms to improve fairness and the ascertainment of truth in criminal proceedings. *See Woods v. United States*, 986 F.2d 669, 678 (3d Cir. 1993).

In *Woods v. United States*, our court also considered the question of retroactivity in a criminal adjudication arising out of a change in the law after the defendant's conviction. The central issue there was the retroactivity of the Supreme Court's *Hughey* decision, *Hughey v. United States*, 495 U.S. 411 (1990), which dealt with the imposition of the penalty of restitution based on alleged wrongdoing that was found by a judge and not a jury. The statute at issue in *Hughey* had been interpreted to allow for judge-decreed restitution on the basis of related credit card fraud crimes, once the defendant was indicted and convicted of a single credit card fraud offense under the statute. *Hughey* held that, as a matter of statutory construction, conviction of each instance of fraud was required before corresponding restitution could be imposed. 495 U.S. at 415-16. The *Woods* court, in considering a motion under Rule 35 of the Rules of Criminal Procedure to correct an unlawful sentence, turned to the Supreme Court's retroactivity jurisprudence developed under §§ 2254 and 2255 habeas corpus proceedings to determine Rule 35 retroactivity. *Woods*, 986 F.2d at 676.

*Woods* observed that the *Hughey* rule did not fit neatly into either the "substantive" or "procedural" categories as set forth by the Supreme Court: "In contrast to *Davis* . . ., *Hughey* has in no way implied that Woods was convicted for acts that the . . . statute did not make criminal." *Woods*, 986 F.2d at 677. Therefore, because it did not render previously unlawful primary conduct lawful, *Hughey* was not substantive. Yet, our court noted,

> *Hughey*'s holding also cannot readily be defined as a new rule of criminal procedure. In its retroactivity analysis the Court has treated as new rules of criminal procedure such developments as the application to the states of the Fourth Amendment exclusionary rule in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the prohibition on race-based peremptory

> challenges of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In our view, *Hughey*'s limitation on a district court's authority to order restitution bears little resemblance to what the Court has commonly characterized as a new criminal procedural rule for retroactivity purposes.

*Woods*, 986 F.2d at 677-678 (internal citations omitted). Unlike the *Gideon* rule, considered the paradigmatic watershed procedural rule, or these other procedural rules, there is nothing especially new about the procedure in Apprendi: "The new part of the *Apprendi* rule . . . is the Supreme Court's novel *application* of this long-recognized constitutional principle." *Rosario v. United States*, 2001 WL 1006641, at *3 (S.D.N.Y.,2001) (emphasis in original).

We are confronted, then, with a rule requiring that all facts correlated to a defendant's sentence be subject to the constitutional protections of our criminal factfinding procedure — the jury and the beyond-a-reasonable-doubt standard. And yet, much like the case of the *Hughey* rule, the existing framework for determining the retroactivity of new rules is inadequate to address the significant deprivations our system has imposed on drug offenders in the absence of factfinding surety. Drug offenders convicted prior to *Apprendi* may have surrendered twenty or more years of their liberty on the basis of findings which have been deemed constitutionally inadequate to support a conviction. Although I recognize the limited circumstances set forth in *Davis/Bousley* and *Teague* for determining retroactivity, I do not believe that the Supreme Court intended to foreclose retroactivity in instances of such grave injustice as this.

Therefore, in accordance with Judge Becker's rationale in *Woods*, I believe that the retroactivity of Swinton ought to be viewed in light of the considerations that undergird the retroactivity doctrines. The selectiveness with which retroactivity is applied reflects the underlying importance of finality of adjudication in our legal system. However, there are countervailing factors which sometimes warrant retroactivity. *Davis* "concluded that the injustice that would

occur but for the retroactive application of the new circuit court decision was sufficiently egregious to warrant retroactivity." *Woods*, at 676-77. Moreover, *Bousley* was concerned with the possibility of actual innocence of the defendant and the impermissibly large risk that the innocent will be convicted. *Bousley*, 523 U.S. at 620. What underlies these cases is the fear of unjust punishment based on unreliable factfinding. Substantive new rules are most likely to give rise to such risk, but this principle should not be so narrowly circumscribed. Similarly, a new procedural rule may partly qualify under the *Teague* exception if it improves accuracy of the trial and sentence, and confidence in our judicial process. *Sawyer v. Smith*, 497 U.S. 227, 242 (1990). Thus we can divine basic principles from these decisions.

Here, therefore, as in *Woods*, "rather than risk applying what may be a wooden or unduly formulaic approach, we will analyze [ ] retroactivity with a view toward the common animating principles underlying the two retroactivity doctrines." *Woods*, 986 F.2d at 678. In *Woods*, Judge Becker concluded that the two separate doctrinal standards that the Court has created "for the retroactive application of new rules of substantive and procedural law are not, at bottom, all that different. Rather, there are common animating principles underlying the two." *Id.* at 678. Both doctrinal procedural and substantive standards, he wrote, reflect the principle that "new decisions will not be retroactively applied without substantial justification." *Id.* In *Woods*, he set out to balance the interest in finality with the interest in avoiding unjust punishments. In making this determination, Judge Becker considered the risk of inaccurate factfinding and the severity of the punishment. Observing that the judge-rendered determination of guilt in restitution offenses provided some assurance of accuracy and, most importantly, that the right at stake was one of property and not liberty, *Woods* held that the interest in finality outweighed the risk of unjust conviction. Judge Becker therefore concluded that *Hughey* was not to be retroactively applied to the defendant in *Woods. Id.* at 671.

By contrast, in the instant case, mere money is not at stake; liberty is. This court noted, significantly, that

"restitution cannot . . . be considered the same as incarceration for retroactivity purposes. [A scenario involving incarceration] would present us with far stronger considerations in favor of retroactive relief. When liberty is not at stake, the reasons to apply a new decision retroactively, and hence to bend the usual rules of finality, are not necessarily lacking, but are more likely to be missing." *Id.* at 680-81. Thus *Woods*, despite holding the restitution rule non-retroactive, adumbrates a different outcome in cases, such as Swinton's, where a liberty interest is at stake. In the instant case, the prosecution has never presented proof to a jury and beyond a reasonable doubt that Swinton was guilty of distributing the type of drug and the quantity by which his sentence was enhanced. Imposing an additional twenty years of confinement without having the facts pertaining to sentencing enhancement submitted to a jury for fact finding beyond a reasonable doubt, as required by *Apprendi*, constitutes a miscarriage of justice that trumps the judicial preference for finality.

Swinton cites us to authority that *Apprendi* announced a substantive new rule in the recent decision of the Supreme Court in *Ring v. Arizona*, 536 U.S. 584 (2002). The case held that Arizona's sentencing scheme was incompatible with the Sixth Amendment because the scheme permitted a judge to make the factual determination that statutory aggravating factors existed warranting the death sentence. The question presented in *Ring* was whether that aggravating factor may be found by the judge, as Arizona law specified, or whether the Sixth Amendment's jury trial guarantee, made applicable to the states by the Fourteenth Amendment, requires that the aggravating factor be entrusted to the jury. *Id.* at 588-89. In deciding this question, the *Ring* court painstakingly reviewed its decision in *Apprendi*, noting the fusion therein of the core crime with the hate crime enhancement. The court held that, as in *Apprendi*, the death sentence violated the defendant's right to a jury determination that he is guilty of every element of the crime with which he is charged. *Id.*

*Ring*, despite the similarity in issues and treatment to *Apprendi*, provides little illumination on whether the

*Apprendi* rule is substantive or procedural. However, significant to the case now before us, the Supreme Court in *Ring* rejected the proposition "that judicial authority over the finding of aggravating factors may be a better way to guarantee against the arbitrary imposition of the death penalty," holding instead that

> [t]he Sixth Amendment jury trial right, however, does not turn on the relative rationality, fairness, or efficiency of potential factfinders. Entrusting to a judge the finding of facts necessary to support a death sentence might be an admirably fair and efficient scheme of criminal justice designed for a society that is prepared to leave criminal justice to the State. The founders of the American Republic were not prepared to leave it to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free.

*Ring*, 536 U.S. at 607 (internal quotations and citations omitted). Although *Ring* involved capital punishment, the Court made clear that the same legal considerations would apply to a non-capital criminal case.

Thus, one does glean from *Ring* that the Court would consider the right to a jury trial a question of "fundamental fairness" — "implicit in the concept of ordered liberty." *See Teague*, 489 U.S. at 314. Although trying elements of a crime before a judge may have some efficiency benefits, and may not be an entirely inaccurate factfinding mechanism, the *Ring* court suggests that the right to a jury trial is, nonetheless, essential to popular confidence in the fairness of the system. *Teague* suggests that such new rules, implicating "fundamental fairness," are not barred from retroactive application.

Moreover, the *Apprendi* decision gives meaning to the venerable presumption of innocence in criminal proceedings. "An *Apprendi* claim in the context of § 841, . . . asserts that while a defendant is guilty of possessing an unspecified quantity of a controlled substance, he is actually innocent of possessing the quantity necessary to be found guilty and sentenced under the more onerous

provisions of 21 U.S.C. §841(b)." *United States v. Clark*, 260 F.3d 382, 388 (5th Cir. 2001) (R.M. Clark, J., dissenting). In this vein, the Supreme Court has portrayed the right to a finding of guilt beyond a reasonable doubt as follows:

> The standard of proof beyond a reasonable doubt, "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. 397 U.S., at 363, 90 S.Ct., at 1072. At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Id.*, at 372, 90 S.Ct., at 1076 (Harlan, J., concurring).

*Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (*quoting In re Winship*, 397 U.S. 358 (1970)). Similarly, the Supreme Court has also recognized the centrality of the right to a trial by jury as a guardian against unjust conviction:

> Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it.

*Duncan v. Louisiana*, 391 U.S. 145, 156 (1968).

Therefore, even though *Apprendi* fits snugly into neither the substantive nor procedural analytic categories, it is distinguished by the fundamental character of the rights it confers. It both ensures that the presumption of innocence is given substance and that public confidence in the fairness of criminal proceedings is maintained, particularly where loss of liberty is at stake. Under these circumstances, *Apprendi* is the kind of rule that retroactivity doctrine was intended to capture in a case such as this.

## IV.

[F]ailing to apply *Apprendi* [in § 841 cases] retroactively . . . create[s] the [ ] troubling possibility that a defendant has been convicted of conduct that constitutes a less serious offense than the one for which he was sentenced." *Coleman v. United States*, 329 F.3d 77, 93 (2d Cir. 2003) (B.D. Parker, J., concurring). Neither *Woods* nor our long-standing faith in the jury system and the beyond-a-reasonable-doubt standard will countenance such a troubling possibility. Thus, following the rationale of this court's decision in *Woods*, Swinton's situation entitles him to the retroactive application of Apprendi for the reasons set forth above. I, therefore, respectfully dissent. I would remand this case to the District Court for further proceedings consistent with this opinion.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*